**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| **SANDRA KAY OBFERGELT, as** | * | |
| **Executor of the Estate of ROBERT** | * | |
| **LEON WHITE, Deceased, and on Behalf** | * | |
| **of His Surviving Next-of-Kin,** | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CIVIL ACTION NO.** |
| | * | |
| **CORRECTHEALTH CATOOSA, LLC,** | * | |
| **LIEUTENANT GEORGE WOOTEN,** | * | |
| **CAPTAIN JAMES STOCKARD,** | * | |
| **OFFICER CRAIG HAILEY, OFFICER** | * | |
| **MICHAEL CHERAMIE, OFFICER** | * | |
| **ERIC BONE, OFFICER TOWSON, and** | * | |
| **"NURSE SANTA CLAUS,"** | * | |
| | * | |
| **Defendants.** | * | |

## COMPLAINT FOR WRONGFUL DEATH

COMES NOW Plaintiff Sandra Kay Obfergelt and hereby files this action to recover damages for the estate and wrongful death beneficiaries of her deceased brother Robert Leon White, showing the Court as follows:

## INTRODUCTION

1.

This is a 42 U.S.C. §1983 federal civil rights action for the wrongful death of Plaintiff's decedent in the Catoosa County jail, with pendent state law claims for

medical and ordinary negligence. Plaintiff alleges that Defendants were deliberately indifferent to Mr. White's serious medical and mental health needs as well as to the known risk of serious harm posed to him by other inmates, which proximately caused him to be violently beaten and killed by a fellow inmate who should not have been housed with him. Plaintiff also asserts state law negligence claims against individual members of the jail's detention staff for negligence in the performance of ministerial duties, as well as state law claims for medical negligence for the failure of the jail's contract medical providers to comply with the applicable standard of care.

## JURISDICTION AND VENUE

2.

This action is brought pursuant to 42 U.S.C. §§1983 and 1988, as well as the Fourteenth Amendment of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §1331, §1343, §1367 and the aforementioned constitutional and statutory provisions.

3.

Jurisdiction is also founded on diversity of citizenship under 28 U.S.C. §1332 because Plaintiff is a citizen of the state of California and Defendants are all citizens of Georgia, and the amount in controversy exceeds the statutory

jurisdictional requirement.  Accordingly, even if the negligence of the Defendants does not rise to the level of deliberate indifference necessary to support the federal claims, the Court will still retain jurisdiction to try the state law claims.

4.

Venue is proper in this Court pursuant to 28 U.S.C. §1391 and other applicable law because the cause of action arose in Catoosa County within the boundaries of the Rome Division of the Northern District of Georgia, and on the further grounds that some if not all Defendants are domiciled within said District and Division.

5.

All parties herein are subject to the jurisdiction of this Court.

**PARTIES**

6.

Plaintiff Sandra Opfergelt is the surviving sister of Robert White – who died with no surviving spouse, parent, or child – and as the duly appointed executor of her brother's estate, she is the proper person to bring action under the Georgia Wrongful Death Act.  As executor, she also brings a claim on behalf of the estate for Mr. White's pain and suffering, medical and funeral expenses, and punitive damages.

7.

Defendant CorrectHealth Catoosa, LLC was at all times relevant herein the contract medical provider for the Catoosa County Jail and is a Georgia for-profit corporation having its principal place of business in Georgia.   Said corporation is subject to the jurisdiction of this Court and may be served through its registered agent, C T CORPORATION SYSTEM, at 1720 Windward Concourse, Suite 300, Alpharetta, GA, 30005.

8.

Defendants George Wooten, James Stockard, Craig Hailey, Michael Cheramie, Eric Bone, and Towson (first name unknown) are law enforcement officers or jailers employed by the Sheriff of Catoosa County, Georgia who may be served at their place of employment or through request for waiver of service care of the Catoosa County Sheriff's Office.

9.

"Nurse Santa Claus" is a fictitious name for the person pictured in the photograph below, which is a screenshot from the bodycam video of Defendant Michael Cheramie who will be correctly identified by amendment once ascertained through discovery:

4



Upon information and belief, she is an employee of CorrectHealth who may be served either at the Catoosa County Jail or through her employer via request for waiver of service.

10.

Plaintiff intends to name additional Defendants once identified through discovery, including but not limited to any members of the jail staff who observed Mr. White's mental condition or were otherwise aware of the risk of serious harm that he was exposed to by being housed with other inmates. Those additional

Defendants cannot be identified based upon presuit investigation because the video evidence upon which such claims would be based was produced through the Open Records Act in a format that Plaintiff is unable to view, with dozens of jail video clips being produced as PDF files rather than viewable videos as demonstrated by the following link showing a portion of Catoosa County's response to Plaintiff's Open Records requests:

https://www.dropbox.com/scl/fi/mobz7ir0wpemxu0tzng8v/Screenshot-2025-12-04-12.24.55.png?rlkey=q89qoe4fdp75imqgnhm4rl0fr&dl=0

The purpose of providing the above link is to put potential Defendants and their counsel on notice that they may be added as Defendants if they were present when any of such videos were recorded and Plaintiff is unable to identify them until viewable copies of the videos are produced in discovery and counsel has add ample time to review them.

12.

At all times relevant herein, the above Defendants acted under color and authority of state law for purposes of the federal constitutional claims against them.

**FACTS**

13.

At all times relevant herein, Robert Leon White had a history of mental

health issues and treatment that was well known in Catoosa County and resulted in his arrest and incarceration on multiple occasions.

14.

His last arrest was on December 2, 2024 when he was charged with two counts of misdemeanor trespass against property for driving his car erratically through his neighbors' property, damaging a trampoline and fence and then leaving the scene.

15.

Hours after that incident, he was located by Lieutenant Wooten, placed him under arrest and transported him to the Catoosa County Jail despite the fact that he was clearly in need of urgent mental health attention which was beyond the jail's capabilities.

16.

Lieutenant Wooten was aware of Mr. White's urgent mental health needs and his past history of mental hospitalization and civil commitment orders, as well as the fact that he should not be housed with the general inmate population because of the threat that his mental instability posed to himself and others.

17.

Upon arrival at the jail, he was booked and placed in general population by

Officer Hailey based on a deficient classification instrument that fell far below the standards set by the Georgia Sheriffs Association and other jail certification agencies as well as the generally accepted standards of the jail administration profession. Despite the obvious deficiencies in the points system used by the jail to classify White's security level and assign housing accordingly, Officer Hailey was well aware of White's mental instability and the obvious risk of harm to White and others if he were housed with other inmates.

18.

After White's arrest and admission to the jail, Captain Stockard reviewed the arrest and booking documents in connection with the arrest by Lieutenant Wooten as well as the incident reports and other information provided by the officers who responded to the incident for which White was arrested. Those officers were also familiar with White's mental health history but were not involved in the arrest and booking, but Captain Stockard was in a position to overrule Officer Hailey's classification and housing decision for the safety of everyone involved, but he chose not to do so.

19.

After White was booked, processed, and placed in a temporary holding cell, he was moved to a general population cellblock on December 3 by Officer

Towson, whose interactions with White are depicted by the following 6-minute video of the cell transfer:

https://www.dropbox.com/scl/fi/2v1u2z1xsmk262aelusew/R.-White-12-03-2024-Rehoused-by-Townson.mp4?rlkey=verhk2acymrq12mspjvwgh09w&st=0nt7qf0z&dl=0

20.

In the audio recording captured by the video (which was produced in viewable format), Mr. White can be heard yelling incoherently and Officer Towson can be heard telling him "I don't give a shit" and "You can't holler in here."  She asks other officers to assist in moving his personal items because "he couldn't he even carry his mask on his own."  When they arrive at the cellblock where he will die the next day, shouts of "Alpha Dog, Alpha Dog!" can be heard on the video while other inmates are either laughing or glaring at him in a menacing manner. Observing this reaction, Towson ridicules White approximately 5 minutes and 50 seconds into the video by saying "He won't last long – they'll have him on the door" (which is jail lingo for relocating an inmate for his own protection and certainly evidences knowledge of the danger he faced).

21.

Like the other Defendants, Officer Towson had actual knowledge of White's

mental instability and the danger that posed, thereby authorizing an inference of deliberate indifference to both his medical and mental health needs as well as to his personal safety.

22.

The video shows that Nurse Santa Claus – so named until her true identity is known – because, in the spirit of the season, she is wearing a pink smock with pictures of Santa Claus and Christmas trees on it.  She appears to have a full appreciation of his need for mental health intervention but fails to act on it, and later she is visibly upset during pill call when he behaves in a bizarre manner as demonstrated by the screen shot in paragraph 9 which was taken from the following video from Officer Cheramie's body-worn camera:

https://www.dropbox.com/scl/fi/v8ef83ewk0n727m8uwm25/MichaelCheramie_20 2412041232_BWC2089513- 0.mp4?rlkey=1r76o9ikm39llqjkg21h00qxi&st=sdycztp7&dl=0

23.

After White left the window at pill call, the next two inmates in line told both the nurse and Officer Cheramie that White had taken a shower with his clothes on, and a discussion ensued between Cheramie and someone who appeared to be another officer about how they needed to talk to White about his behavior.

24.

Throughout the course of the day on December 3, several inmates complained to jail staff – including but not limited to Officer Cheramie and Officer Bone – that White was behaving in a bizarre manner and causing problems with other inmates.  Four of those inmates are identified in incident reports after White's murder but their names are not being disclosed here for privacy and security reasons since the murder investigation is still pending.

25.

The inmates expressed concerns to Cheramie and Bone that White was having a mental health breakdown and needed treatment, or at the very least to be kept in segregation so nobody would hurt him, but those concerns were not acted on by any of the Defendants.

26.

Rather than moving White to a mental health observation cell, a medical observation cell, protective custody, or disciplinary segregation – any of which would have been a viable option had Defendants not been indifferent to his plight – Mr. White was remained in general population and was locked down that night with a cellmate named Erwin Vanegas who was himself unstable and clearly annoyed by White's behavior.

11

27.

At approximately 12:45 AM, Vanegas began stomping repeatedly on White's head. Other inmates began screaming that someone was dying, and when officers responded they found White bleeding heavily from the face with a sheet wrapped around his head. White was still alive and breathing and was transported by ambulance to Erlanger Hospital where he ultimately died from his injuries.

28.

After White's death, Vanegas was charged with murder and elder abuse and is now awaiting trial on those charges. In addition to whatever information is adduced through discovery – which may itself be hampered by the pending prosecution – it is likely that the trial will reveal additional facts and result in the identification of additional Defendants.

**THEORIES OF LIABILITY**

COUNT ONE:
FOURTEENTH AMENDMENT CLAIM FOR
DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

29.

The forementioned conduct of the individual Defendants constituted deliberate indifference to the serious medical and mental health needs of an arrestee or pretrial detainee in violation of the Fourteenth Amendment.

12

30.

Because the above-described conduct of Defendants violated clearly established law of which a reasonable officer, jailer, or jail nurse should have known in the year 2024, Defendants are not entitled to qualified immunity and are liable under 42 U.S.C. §1983 for violating the Fourteenth Amendment rights of Plaintiff's decedent.

COUNT TWO:
FOURTEENTH AMENDMENT CLAIM FOR
DELIBERATE INDIFFERENCE TO A RISK OF SERIOUS HARM

31.

The forementioned conduct of the individual Defendants constituted deliberate indifference to a known risk of serious harm posed to – or by – a particular arrestee or pretrial detainee – in violation of the Fourteenth Amendment.

32.

Because the above-described conduct of Defendants violated clearly established law of which a reasonable officer, jailer, or jail nurse should have known in the year 2024, Defendants are not entitled to qualified immunity and are liable under 42 U.S.C. §1983 for violating the Fourteenth Amendment rights of Plaintiff's decedent.

13

COUNT THREE:
STATE LAW PROFESSIONAL NEGLIGENCE CLAIM
AGAINST JAIL MEDICAL STAFF

33.

At all times relevant herein, the nurse presently identified as "Santa Claus" and yet to be identified nurses or other individual medical providers – whether named as Defendants or not – were agents or employees of Defendant CorrectHealth acting within the scope of said agency or employment who owed a duty of care to Robert White.

34.

The above-described conduct of Defendant CorrectHealth and its nurse or other providers fell below the professional standard of care applicable to medical providers in general under similar circumstances and conditions constitutes professional negligence under Georgia law.

35.

Separate and apart from their alleged deliberate indifference to federal constitutional rights, Defendant CorrectHealth and its nurse or other employees were negligent in failing to comply with the standard of care applicable to a licensed nurse or other provider in a jail setting.

14

37.

Defendant CorrectHealth is liable under the doctrine of *respondeat superior* for the negligence of its employees or agents whether been named as Defendants or not, in causing the death of Plaintiff's decedent.

38.

In addition to being vicariously liable for the negligence of its employees or agents, Defendant CorrectHealth is liable for own negligence in hiring, training, retention, and implementation of proper policies, procedures and protocols to thre extent that such deficiencies become known though discovery, in which case the evidence may also support an amendment to add a Section 1983 claim against CorrectHealth since there is no *respondeat superior* liability under Section 1983.

**DAMAGES**

39.

As a direct and proximate result of the aforementioned unconstitutional, unlawful, and negligent misconduct of the Defendants, Plaintiffs' decedent died a premature death and experienced significant conscious pain and suffering in the horrific moments leading up to his death, and his estate incurred funeral and other necessary expenses, for which Plaintiffs are entitled to recover the full value of the life of the decedent as well as compensatory damages for the aforesaid losses and

15

injuries in an amount to be proven at trial and determined by a fair and impartial jury.

40.

The forementioned conduct of one or more Defendants rose to such a level of bad faith, willfulness, and reckless disregard for the consequences as to authorize the imposition of punitive damages against any and all such Defendants.

41.

Plaintiffs are entitled to recover reasonable attorney's fees on their federal claims pursuant to 42 U.S.C. §1988.

WHEREFORE Plaintiffs demand as follows:

a)   That this action be tried by a jury;

b)   That judgment be entered in favor of Plaintiff and against Defendants in an amount to be determined by the enlightened conscience of fair and impartial jurors;

c)   That Plaintiffs be awarded reasonable attorney's fees and expenses of litigation by the Court;

d)   That all costs of this action be taxed against Defendants; and

e)   That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

16

Respectfully submitted this 17th day of December, 2025.

/s/ *Craig T. Jones*
CRAIG T. JONES
Ga. Bar No. 399476
Attorney for Plaintiffs

CRAIG T. JONES, P.C.
Post Office Box 66
Savannah, Georgia 31402
(678) 643-0062
craigthomasjones@outlook.com

17